THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PEDRO GARCÍA DÁVILA, Defendant and Appellant.

No. Cr–62–13. Decided November 15, 1962.

*Benjamín Ortiz* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM.

Appellant was charged with involuntary manslaughter. The jury in the Superior Court, San Juan Part, found him guilty and the trial judge sentenced him to serve one year in jail. He appealed from that judgment assigning the commission of two errors.

Let us examine the facts. On August 2, 1959 defendant, in the company of seven other persons, was operating a pickup wagon along Avenida Norte in the direction of Santurce. As he passed by Lloréns Torres housing project the vehicle hit the island in the center of the avenue and over-

turned. Minor Olga de Jesús Vázquez, who was riding in the vehicle, lost her life in the accident. The other passengers were injured and some lost consciousness.

I. Appellant alleges that the trial judge erred in making certain questions and remarks to the witnesses in the presence of the jury, thus expressing indirectly his opinion on the credibility of the witnesses and the value of their testimony.

When prosecution witness Hilda Guzmán García was testifying, the district attorney produced a sworn statement given by her before district attorney Ismael Betancourt Lebrón. The inference to be drawn from the record is that certain portions of that statement were at variance with the testimony given by the witness in court. The following dialogue took place:

"DISTRICT ATTORNEY:
What that pickup wagon did was to move over to the right so as to yield the right of way?

WITNESS:
A. Yes, sir.

DISTRICT ATTORNEY:
Did you say that to district attorney Betancourt?

WITNESS:
A. Yes, sir.

DISTRICT ATTORNEY:
On August 20, 1959?

WITNESS:
A. Yes, sir.

DISTRICT ATTORNEY:
Since I was looking back, I saw a red car coming, and as it drew near the pickup speeded leaving it behind. And it left the car behind?

WITNESS:
A. That is the truth.

HON. JUDGE:

The question is: If that is the truth? Because now you say one thing and then another.

DISTRICT ATTORNEY:

Miss, my question is: Which is the truth, what you told district attorney Betancourt or what you are testifying here?

WITNESS:

A. I am telling the truth, about the blue car.

HON. JUDGE:

What you are being asked is not true. What you are being asked here today in court is: That you were looking back and saw a red car and a blue car coming, and that when the pickup wagon tried to pass the red car the pickup drew near the car. What you testified was that the red car went past and that the man drove fast and that the driver of the pickup drove even faster. Which is the truth?

WITNESS:

A. The truth is that, now, the truth is about the red car.

DISTRICT ATTORNEY:

Which is the truth, that it was racing?

WITNESS:

That is not it.

DISTRICT ATTORNEY:

Which is the truth then?

WITNESS:

A. That it was speeding and that the car stayed way behind. I explained it clearly to Mr. Betancourt."

And further on:

"HON. JUDGE:

Which is the truth, we are asking you?

WITNESS:

A. The truth is this.

HON. JUDGE:

You may explain now.

DISTRICT ATTORNEY:
The truth is this sworn statement.

WITNESS:
A. Well . . .

DEFENSE:
They do not let her talk.

HON. JUDGE:
Without comment. Lady, you may answer. The truth is what you say there in that statement about the speed?

WITNESS:
A. May I . . .

HON. JUDGE:
Whether that is the truth?

WITNESS:
A. Well . . .

DEFENSE:
Your Honor, we take exception. And also the emphatic tone, Your Honor, and the gesture.

HON. JUDGE:
You may speak now. What do you want to explain?"

█ █  In view of all the circumstances, we do not believe that the action of the judge in this case constitutes prejudicial error. The right of a judge to examine the witnesses, particularly when their testimony is not clear, has been upheld time and again. *Jordan* v. *United States*, 295 F.2d 355 (10th Cir. 1961), *cert. denied*, 82 S. Ct. 479 (1962); *State* v. *Strickland*, 119 S.E.2d 781 (N.C. 1961); *People* v. *Wesley*, 163 N.E.2d 500 (Ill. 1959); *People* y. *Rigney*, 359 P.2d 23 (Cal. 1961).

In *United States* v. *Hawkins*, 295 F.2d 837 (6th Cir. 1961), it was said at p. 840: "Each case must, of course, depend upon its own particular facts and the overall evaluation of the charge as a whole. The right of the trial judge to comment on the evidence necessarily includes the right

to comment unfavorably, so long as comment does not become advocacy and it is made clear to the jury that irrespective of such comment the ultimate determination of the facts is left to the jury." See, also, *United States* v. *Kravitz*, 281 F.2d 581 (3d Cir. 1960).

██ The instructions which the presiding judge transmitted to the jury do not appear in the transcript of the evidence. We must assume that the instructions transmitted conform to law and that they necessarily included an instruction to the jury that they are the sole triers of fact and that it is their duty to resolve any conflict in the evidence.

The situation in this case is very similar to that which we considered in *People* v. *Salas*, 60 P.R.R. 675 (1942). The information and conviction in that case were also for involuntary manslaughter. On that occasion we said: "The fact that the judge warned the witness that it was his duty to tell the truth does not show that he was at all prejudiced against the accused. It appears from the record that the witness had testified at the preliminary inquiry in a way contrary to that in which he was trying to testify in court and as one testimony conflicted with the other, it was the proper thing for the judge to remind him that it was his duty to tell the truth." See, also, *People* v. *Aletriz*, 85 P.R.R. 621 (1962); *People* v. *Sanjurjo*, 73 P.R.R. 526 (1952); *People* v. *Bartolomei*, 70 P.R.R. 664 (1949); *People* v. *Rodríguez*, 65 P.R.R. 497 (1946); *People* v. *Rodríguez*, 62 P.R.R. 241 (1943); *People* v. *León*, 53 P.R.R. 408 (1938); and *People* v. *Acevedo*, 35 P.R.R. 886 (1926).

The error was not committed.

██ II. Appellant alleges that the verdict was contrary to the evidence. He maintains that the information alleged that defendant was operating the vehicle at excessive speed, and the evidence did not establish that fact. In its pertinent part the information charged him that "without exercising due precaution, care and circumspection, driving at excessive

458

speed, he did so with such negligence and carelessness that the motor vehicle overturned and six occupants fell to the pavement, among whom was the human being Olga de Jesús Vázquez, who suffered serious injuries which caused her death."

As has been seen, the information charged defendant with operating the vehicle at excessive speed, and also that he was driving "with such negligence and carelessness that the motor vehicle overturned." And the evidence shows that the vehicle was traveling fast, "flying on the road" (Tr. Ev. 33); "it was racing" (Tr. Ev. 34); "some times Pedro (the defendant) went past it, other times the car went past him; some times they were side by side, then he went past it, and other times the car did"; and they did that "for about ten or fifteen minutes" (Tr. Ev. 28); and that "it started to zigzag" (Tr. Ev. 35). It was also established that the vehicle "traveled one hundred feet" before overturning (Tr. Ev. 71). From the entire evidence it appears clearly that the driver did not exercise care and also that he was traveling at an excessive speed.

The judgment appealed from will be affirmed.