UNITED STATES of America

v.

John Henry SMITH.

Crim. No. 76–564.

United States District Court, E. D. Pennsylvania.

April 20, 1977.

David W. Marston, U. S. Atty., John E. Riley, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Gerald Jay Pomerantz, Walters & Pomerantz, Philadelphia, Pa., for defendant.

## MEMORANDUM

BRODERICK, District Judge.

Defendant, John Henry Smith, was convicted by a jury on March 16, 1977 of distributing heroin in violation of 21 U.S.C. § 841(a)(1). The defendant has filed motions for a new trial and/or for arrest of judgment. After carefully considering all of the grounds raised in defendant's motions, the Court has determined that defendant's motions must be denied.

### Sufficiency of the Evidence

The defendant contends that the Court erred in denying his motion for a judgment of acquittal made during the trial and contends further that there is insufficient evidence to support the verdict. The evidence produced at trial, viewed in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Armocida*, 515 F.2d 29 (3d Cir.), *cert. denied* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), is more than sufficient to support the verdict. The evidence may be summarized as follows:

Agent James Williams of the Drug Enforcement Administration (DEA) testified that while he was acting in an undercover capacity, an informant, Richard Selby, introduced him to the defendant and told the defendant that Agent Williams wanted to purchase large quantities of drugs. Agent Williams testified that he wanted to set up a transaction with the defendant in an effort to reach a Reggie Cole, a man suspected of dealing in large quantities of heroin in the area. The first meeting between the defendant and Williams took place at the defendant's home where Selby introduced them. The defendant testified that during this meeting they discussed the defendant's obtaining a large quantity of heroin.

On April 19, 1976, there were two phone conversations between the defendant and Agent Williams, the first one initiated by the defendant. The tape recordings of both conversations were played at the trial. In the telephone conversations the defendant said he had gotten in touch with Reggie Cole, who was his source, and that a sale for a large quantity of heroin could be arranged. It was agreed that an initial transaction of one-quarter ounce for $400 as a "tester" would take place that afternoon. If the tester proved satisfactory to Agent Williams, the defendant would set up a transaction for a larger quantity to cost $15,000 to $16,000.

In the afternoon of April 19, 1976, the defendant met with Agent Williams and gave him a package for which Agent Williams paid him $400. Robert Janice, a Government chemist, testified that the substance the defendant sold to Agent Williams was heroin.

Agents Stephen Hobson and William Keane of the DEA, who conducted the surveillance, corroborated Agent Williams' account of the events which transpired on April 19, 1976.

The defendant took the stand and corroborated Agent Williams' testimony concerning the $400 purchase on April 19, 1976. The defendant testified, however, that he and Selby had planned to "rip off" Agent Williams by selling him a substance that was all "cut" and not heroin. He testified that Selby told him to say that he was a cousin of Cole's. The defendant testified that he paid "Louie" $200 for the package which he thought contained all "cut" and no heroin, and that it was this package that he sold to Agent Williams in order to "rip him off".

■ The jury found the defendant guilty of distributing heroin in violation of 21 U.S.C. § 841(a)(1).[1] As heretofore stated, the evidence presented to the jury was more than sufficient to support the jury's verdict. The defendant, however, argues that even though the defendant's version did not contradict Agent Williams' testimony concerning the April 19, 1976 transaction in which Agent Williams paid him $400 for the package containing heroin, the Government failed to produce sufficient evidence to enable the jury to find beyond a reasonable doubt that he was not entrapped.

■ The defendant is entitled to a charge on entrapment when he shows (1) evidence that the Government initiated the crime, regardless of the amount of pressure applied to the defendant, and (2) any evidence negating the defendant's propensity to commit the crime. *United States v. Armocida*, 515 F.2d 49, 55 (3d Cir.), *cert. denied* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). The Court charged the jury on entrapment, and the defendant takes no exception to the charge.

■ There is no question that the burden is on the Government to prove beyond a reasonable doubt that the defendant was not entrapped. *United States v. Watson*, 489 F.2d 504 (3d Cir. 1973). In the instant case there was more than sufficient evidence establishing defendant's propensity to deal in narcotics. The tape recordings of the conversations between Agent Williams and the defendant establish that the defendant said he could supply $15,000 to $16,000 worth of heroin and that the $400 initial transaction was merely a "tester" to be followed by larger transactions. This is clearly sufficient evidence to show that defendant was a knowing and willing participant in the transaction. *See United States v. Armocida, supra*, 515 F.2d at 55–56. The testimony presented by defendant to negate his propensity was that he intended to "rip off" Williams by selling him a package containing all "cut" and no heroin, and that he did not know that the package he sold to Williams contained heroin. Matters of credibility are for the jury, *United States v. Greenlee*, 517 F.2d 899, 903 (3d Cir.), *cert. denied* 423 U.S. 985, 96 S.Ct. 391, 46 L.Ed.2d 301 (1975), which in this case accepted the Government's version and rejected the defendant's testimony. As the Court charged the jury:

> The fact that law enforcement officials merely afforded opportunity for the commission of criminal conduct does not constitute entrapment. Entrapment occurs only when the criminal conduct was the product of the creative activity of law enforcement officials.

There was ample evidence for the jury to find beyond a reasonable doubt that there was no entrapment, and that the defendant was ready and willing to break the law.

### Testimony of Agent Williams

During the cross-examination of Agent Williams, defendant's counsel asked how the informant and the defendant came to know each other. Agent Williams replied

---

1. It provides:

 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

that they were "paperhanging" together. Defendant's counsel then asked Agent Williams for his definition of "paperhanging" and Agent Williams replied that it was dealing in bad paper. The Court immediately instructed the jury to disregard the testimony and ordered it stricken. Defendant now contends that the Court erred in denying defendant's motion for a mistrial based on Agent Williams' answer and at oral argument defendant's counsel contended that Agent Williams deliberately made this remark to prejudice the jury.

In *McBride v. United States*, 409 F.2d 1046 (10th Cir.), *cert. dismissed* 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240 (1969), while cross-examining a Government witness about a prior conviction for manslaughter, defense counsel asked who had been killed. The witness answered that the victims had been killed in an armed robbery directed by the defendant. The Tenth Circuit ruled that there was no prejudicial error in view of the trial court's instruction to the jury to disregard the testimony and ordering the testimony stricken. *Accord Atkinson v. United States*, 344 F.2d 97 (8th Cir.), *cert. denied* 382 U.S. 867, 86 S.Ct. 141, 15 L.Ed.2d 106 (1965). *Cf. United States v. Harrington*, 490 F.2d 487, 490 (2d Cir. 1973). In this case, the defendant himself testified concerning his past criminal convictions, and the Court charged the jury that the prior convictions were merely circumstances that they could consider in determining the defendant's credibility and that they were not to be used for any other purpose. The Court finds that the defendant was not prejudiced by Agent Williams' answer and that there was no error in its refusal to grant a mistrial. There is absolutely no evidence that Agent Williams acted with any intent other than to answer a direct question posed by defense counsel.

For all of the reasons discussed heretofore, we deny defendant's motions.